UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEL-RIO SWINK, | ) |
| | ) |
| Plaintiff, | ) Case No. 4:25-CV-00569 |
| | ) |
| v. | ) |
| | ) |
| THOMAS LOVE, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT CITY OF ST. LOUIS'S RESPONSE TO COURT (DOC. 38)

COMES NOW Defendant City of St. Louis ("City"), by and through its attorney Michael Garvin, City Counselor for the City of St. Louis, and in response to this Court's inquiries at the hearing on October 3, 2025, (doc. 38), states:

### INTRODUCTION

On October 3, 2025, this Court held a hearing on the State's motion to substitute parties (Board for City). (Doc. 38). At the hearing, the Court inquired about a number of topics, some of which were briefed by the parties, some of which were not. Of those issues not briefed, the Court requested additional briefing. (Doc. 38). Specifically, the Court requested information regarding Plaintiff's claim against City under the Americans with Disabilities Act (ADA), and how that claim differed from a *Monell* claim, if at all. The Court also sought clarification about who the policymaker is related to post-arrest ADA compliance, and whether and how the policymaker

question impacts the motion to substitute parties.[1] City responds to the Court's inquiries as follows.[2]

### I.     *Monell* and Title II ADA claims are similar in that both prohibit vicarious liability.

The Supreme Court held in *Monell v. New York City Dept. of Social Servs.*, 436 U.S., at 689, that municipalities and other local governmental bodies are "persons" within the meaning of § 1983. *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). But it also recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor. *Id.* In fact, the Supreme Court has consistently refused to hold municipalities liable under a theory of *respondeat superior*. *Id.*, citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985) (plurality opinion); *Pembaur*, 106 S.Ct., at 1297–1298; *St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) (plurality opinion); *Canton v. Harris*, 489 U.S. 378, 392 (1989). Instead, in *Monell* and subsequent cases, the Court has required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. *Id.*

---

[1] The State filed a motion to substitute the Board for City, (doc. 23), but sought to withdraw that motion and hearing thereof, (doc. 34), which this Court denied, (doc. 37). On October 14, 2025, City filed its own motion to substitute parties, arguing the State should be substituted for City.

[2] The City briefs these issues at the Court's request but does not, in so doing, concede or agree that any analysis set forth herein is necessary or relevant to the issue before the Court. Indeed, the City maintains that it is not. This is so because it is enough to say that, under a plain reading of § 84.325.3, any and all liability that belonged to City because of City's prior operation of the police department transferred to the State of Missouri, just as the Board's liabilities transferred to City following local control. Controlling Missouri law impels this conclusion. *See, e.g.*, *Holmes v. Zeller*, No. ED 112676, 2025 WL 2110585, n. 1 (Mo. Ct. App. July 29, 2025) (holding that, pursuant to substantively identical statutory language accompanying local control in 2013, "the Board transferred all of its obligations, responsibilities, and liabilities to City as the Board's successor in interest").

Similarly, vicarious liability is not available under Title II of the ADA.[3] Courts have consistently relied on Title IX cases when applying Title VI (and vice versa), and on both Title IX and Title VI cases when applying Title II of the ADA and the RA (and vice versa). *See e.g.*, *Cannon v. Univ. of Chi.*, 441 U.S. 677, 694-98 (1979) (holding that a private cause of action is available under Title IX, reasoning that "Title IX was patterned after Title VI" and "when Title IX was enacted, the critical language in Title VI had already been construed [by lower courts] as creating a private remedy"); *Guardians Ass'n v. Civil Serv. Comm'n of the City of New York*, 463 U.S. 582, 594-95 (1983) (plurality opinion) (holding that a private cause of action is available under Title VI, relying on *Cannon*); *Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (holding that a private cause of action is available under the ADA and RA, relying on prior Title VI cases finding a private cause of action). Therefore, what the Supreme Court said in *Gebser* regarding the availability of vicarious liability under Title IX is directly relevant to the availability of vicarious liability under Title II of the ADA. In *Gebser*, the Supreme Court held that a public entity could not be found vicariously liable under Title IX for acts committed by school-district employees in the course of their employment. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289-90 (1989). Because vicarious liability is not available under Title IX, vicarious liability is not available in Title II cases. *See Jones v. City of Detroit*, 20 F.4th 1117 (6th Cir. 2021) (holding "vicarious liability does not apply to Title II of the ADA"); *Ingram v. Kubik*, 30 F.4th 1241 (11th Cir. 2022) ("Under Title II, vicarious liability is unavailable."); *Casey v. Cooper*, 4:23 CV 206 JMB, 2024 WL 1856176, at *5

---

[3] The ADA consists of three titles addressing discrimination against the disabled in different contexts. Title I prohibits employment discrimination, 42 U.S.C. § 12112, Title II prohibits discrimination in the services of public entities, 42 U.S.C. § 12132, and Title III prohibits discrimination by public accommodations involved in interstate commerce such as hotels, restaurants, and privately operated transportation services, 42 U.S.C. §§ 12182, 12184.

(E.D. Mo. Apr. 29, 2024) ("the Court finds that the Eighth Circuit would follow the Eleventh and Sixth Circuit Courts and hold that vicarious liability is not available in Title II cases.").[4]

That *Monell* and ADA claims prohibit vicarious liability is notable here where Plaintiff alleges that City is vicariously liable for the actions of defendant-officers Allmon, Krepps, and Stark. In Count II, Plaintiff asserts that "Ms. Swink is a qualified individual with a disability within the context of the ADA," that "she informed all Defendant SLMPD Officers that she suffered from peripheral neuropathy and was severely injured in her back and hips," and that despite having actual knowledge of Ms. Swink's disabilities and injuries, "Defendant SLMPD Officers failed to ensure that Ms. Swink was transported to the hospital in a manner that would not cause her needless additional pain and injury due to her disabilities." (Doc. 1, ¶¶ 128, 132, 134). While Plaintiff alleges that "City policymakers in the City of St. Louis were on notice that SLMPD Officers used police vans to transport arrestees regardless of their potential disabilities" and that "policymakers in the City of St. Louis failed to create any practices, guidance, or customs that would allow for alternate means of transport when an arrestee has a disability," (doc. 1, ¶¶ 142, 143), such allegations are conclusory and void of facts. On the whole, Plaintiff invokes the exact kind of vicarious liability prohibited under Title II of the ADA. *Hooper v. City of St. Paul*, 17-CV-3442 (PJS/DTS), 2019 WL 4015443, at *11 (D. Minn. Aug. 26, 2019) ("In sum, this Court concludes that Congress made a deliberate decision not to include 'any agent' language in the definition of 'public entity' in Title II of the ADA [], and that Congress did so because it did not intend that public entities be held vicariously liable under Title II [] for the acts of their employees.").

---

[4] This issue is currently pending before the Eighth Circuit Court of Appeals in *Jones v. City of St. Louis*, Appeal No. 24-1912.

**II.      ADA claims are distinguishable from *Monell* claims in that the ADA permits distinct liability for subsections of local government, like police departments.**

Title II of the ADA took effect in January of 1992 and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" is defined to be "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1).

A local police department, like SLMPD, falls "squarely within the statutory definition of 'public entity.'" *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998). *Gorman* is directly on point here. In *Gorman*, like here, the plaintiff filed suit under Title II of the ADA for injuries he received post-arrest when being transported in a police van that was not equipped with wheelchair restraints. The plaintiff sued a police officer, the police chief, and each member of the Kansas City Board of Police Commissioners. In deciding whether the plaintiff's claims fell under Title II of the ADA, the Court considered, in part, whether the local police department was a "public entity" under Title II. *Id.* In finding that it was, the Court looked to the Supreme Court's decision in *Pennsylvania Department of Corrections v. Yeskey,* 118 S.Ct. 1952 (1998), which held that "State prisons fall squarely within the statutory definition of 'public entity' since § 12131(1)(B) defines public entity as 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Id.*, citing *Yeskey*, 524 U.S. at 1954. Applying that same reasoning, the Eighth Circuit held that a "local police department falls squarely within the statutory definition of public entity [under Title II of the ADA], just like a state prison." *Id.* Thus, the express language of the ADA envisions independent liability for subsections or departments of local government, like a local government's police department.

5

### III. Policies and procedures regarding prisoner protocols, including transportation accommodations of arrestees, rests with SLMPD.

At the hearing, Plaintiff correctly pointed out that the City has an Office on the Disabled. That Office "assists the City in complying with the Americans with Disabilities Act (ADA)." Office on the Disabled, https://www.stlouis-mo.gov/government/departments/human-services/disabled-office/index.cfm (last visited Oct. 12, 2025). The Office provides services in the following respects: assisting City Departments to make all their services fully accessible, responding to grievances presented by individuals with disabilities, providing people using City services alternative forms of communication as needed, participating with other public and private organizations working to make our City fully accessible and full of opportunities, providing individuals with information on resources to other appropriate agencies for services and for help with developing independent living strategies, finding reasonable accommodations for disabled City employees and job applicants, providing training on the ADA to various City agencies and others as appropriate, and working toward making the physical environment in the City as accessible as possible. *Id.*

However, the Office on the Disabled, plays no role in policymaking for SLMPD regarding post-arrest policy or procedures, including transportation accommodations of prisoners. While the Office has, at times, consulted with SLMPD regarding internal accommodation requests from SLMPD employees, to the best of counsel's knowledge, the Office has not consulted with the Police Department about any policy regarding post-arrest procedures, including transportation accommodations of suspects or arrestees. Any policy regarding arrestees, including the accommodations of arrestees, if any, is solely within the purview of SLMPD. *See e.g.*, Special Order 5-06, Section VII, Sick and Injury Cases Involving Prisoners in Police Custody; Special Order 8-03, Section VI, Medical and Healthcare Services. That such policies are solely within the

purview of SLMPD makes sense, as City has no use for an arrest policy, regarding the transportation of arrestees/prisoners or otherwise, absent its Police Department.

IV. **Substitution of the State and/or Board is appropriate here for claims against City under the ADA where the Police Department is a "public entity" under Title II of the ADA and the State accepted "responsibility, ownership, and liability as successor-in-interest…of the municipal police department."**

Under Mo. Rev. Stat. Section 84.325.3, the State accepted "responsibility, ownership, and liability as successor-in-interest for contractual obligations and other lawful obligations of the municipal police department." And as we have seen above, any policy/protocol regarding arrestees is exclusively within the purview of SLMPD. As such, any lawful obligation in this matter has been assumed by the State, or in the alternative, by the Board.

Even if such policymaking were not confined exclusively to SLMPD, it is the acts of police officers which give rise to City's liability in this matter. RSMo. § 84.325 unequivocally delegates all liability to the State as successor-in-interest for the lawful obligations of City's prior operation of the police department. It is undisputed that the operation of the Police Department, through the actions of its officers, is the catalyst for Plaintiff's claims in this matter. (Doc. 1). As such, the City should be out of this matter, and the State and/or Board should be substituted in its place.

Prior to the hearing on October 3, 2025, the State, relying on Judge Divine's order in *Clark*, withdrew its motion to substitute the Board for City. However, Divine's order is inapplicable here where Plaintiff brings claims under the ADA. Divine's order, which this Court correctly pointed out is not binding on it, found that the Board could not be substituted for claims against City under *Monell*. Plaintiff brings a claim against City under Title II of the ADA, which, unlike a *Monell* claim, specifically envisions liability against a subsection of local government, like SLMPD, and, in fact, has been upheld against a subsection of local government – the Kansas City Board of Police Commissioners – in the Eighth Circuit. *Gorman*, 152 F.3d at 912. It is that very same liability, the

7

liability of the "municipal police department," which was assumed here by the State, or in the alternative, the Board through Mo. Rev. Stat. Section 84.325.3. Thus, the question of what to do with City in *Clark* was arguably a closer call than it is here. In this case, unlike in *Clark*, the language of Title II, the express language of 84.325.3, and SLMPD's exclusive jurisdiction related to post-arrest policy and procedure, necessitates that the State, or in the alternative the Board, be substituted for City in this matter.

Respectfully Submitted,

**MICHAEL GARVIN,**
**CITY COUNSELOR**

s/ Abby Duncan
Abby Duncan #67766MO
Associate City Counselor
*Attorney for the City of St. Louis*
Andrew Wheaton #65269MO
Deputy City Counselor
Aaron K. Waters #24135673TX
Assistant City Counselor
City Hall, Room 314
St. Louis, MO 63103
314.622.4694
duncana@stlouis-mo.gov
wheatona@stlouis-mo.gov
watersaa@stlouis-mo.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

/s/ Abby Duncan