IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DEL-RIO SWINK**, Plaintiff | ) ) ) |
| v. | ) ) ) Cause No.: 4:25-cv-00569 ) |
| **THOMAS LOVE, et al.** Defendants. | ) ) ) |

**PLAINTIFF'S POST-HEARING BRIEFING IN RESPONSE TO COURT ORDER**

On October 3, 2025, a hearing was called and the parties were heard on issues related to the proposed substitution of parties. Subsequently, this Court ordered the parties to submit additional briefing regarding outstanding issues outlined in the record. Doc. 38. Plaintiff submits the following brief regarding: (1) the proper defendant for Plaintiff's Title II claim; (2) the identities of St. Louis City's (also referred to as the "City") policymakers controlling St. Louis Metropolitan Police Department's ("SLMPD") compliance with the Americans with Disabilities Act ("ADA"); (3) how a transfer of interest functions under Mo. Rev. Stat. § 84.325.3 when the ADA policymakers are hierarchically "above" the Board of Police Commissioners (the "Board") and (4) whether money judgments against the Board could be paid or reimbursed by the State Legal Expense Fund per Mo. Rev. Stat. § 105.726.3, and if not, what source of funds section 84.325 anticipates being used for this purpose. Doc. 38.

**I.   The City is the most appropriate defendant for Plaintiff's ADA claim.**

Title II's definition of "public entity" is broad enough to include both the City of St. Louis and SLMPD. However, given the hierarchal structure of the City's ADA compliance

procedures and the lack of authority requiring Title II claims be brought against police departments, the most appropriate defendant for Plaintiff's Title II claim is the City itself.

> a. <u>While SLMPD can be sued under Title II of the ADA, the City of St. Louis is a proper defendant under Title II as it ensures SLMPD complies with the ADA.</u>

Under Title II of the ADA, a "public entity" is defined as either "any State or local government;" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government" § 12131(1). This definition includes the City of St. Louis by its plain language.

Generally, police departments are not legal entities subject to suit separate from the local government. *De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst.*, 18 F. App'x 436 (8th Cir. 2001). However, for an ADA claim, the inclusion of "any department" in the definition of public entity could be construed as a statutory authorization establishing the ability for plaintiffs to sue police departments under the ADA. *Estes v. Lederle*, 2007 WL 2693823, at *2 (E.D. Mo. Sept. 10, 2007) (dismissing the St. Ann Police Department from suit in the absence of statutory authority establishing ability to sue). In *Gorman v. Bartch* the Eighth Circuit held that "[a] local police department falls "squarely within the statutory definition of 'public entity,'" under Title II of the ADA. *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998).[1] Meaning, SLMPD could potentially have been named as a defendant to Plaintiff's Title II claim.

Importantly, however, there is no language in Title II mandating a plaintiff sue a police department *instead* of a municipality in situations where members of the police department have violated the ADA. Plaintiffs can choose to sue the City, the police department, or both. *See e.g.*,

---

[1] Police departments have been named as defendants in various Title II suits in the Eighth Circuit, including but not limited to: *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), *Thao v. City of St. Paul*, 481 F.3d 565 (8th Cir. 2007), *Bahl v. Cnty. of Ramsey*, 695 F.3d 778 (8th Cir. 2012), *Roberts v. City of Omaha*, 723 F.3d 966 (8th Cir. 2013), and *Cox v. Callaway Cnty. Sheriff's Dep't*, No. 2:18-CV-04045-NKL, 2019 WL 1049389, at *1 (W.D. Mo. Mar. 5, 2019).

*Thao v. City of St. Paul*, 481 F.3d 565 (8th Cir. 2007), *Bahl v. Cnty. of Ramsey*, 695 F.3d 778 (8th Cir. 2012), *Roberts v. City of Omaha*, 723 F.3d 966 (8th Cir. 2013).

In the instant case, the City of St. Louis is the most appropriate defendant for Plaintiff's Title II claim. As discussed below, St. Louis City's Office on the Disabled is responsible for ensuring that St. Louis departments comply with the ADA in their policies, services, and modifications and accommodations concerning the same. The City is a proper defendant because it is responsible for ensuring its departments comply with the ADA, and is subject to suit by the plain language of Title II.

      b. <u>Plaintiff has adequately pleaded a prima facie case for intentional discrimination under Title II of the ADA against the City of St. Louis.</u>

A plaintiff can pursue claims under Title II of the ADA if they meet the requirements laid out in the plain language of the statute and demonstrate a statutory violation has occurred. *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998). Title II of the ADA prohibits public entities from discriminating in the provision of their services. 42 U.S.C. § 12132. Title II states: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual with a disability" is defined as "an individual with a disability who…meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). A "public entity" is defined as either "any State or local government;" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government" § 12131(1).

A plaintiff states a prima facie case for discrimination under Title II of the ADA if she can show she is a (1) qualified individual with a disability, who (2) has been denied participation

in, or the benefits of, the services, programs, or activities of a public entity, (3) because of her disability. *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (citing *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998). Plaintiff Swink has surpassed this threshold test. *Cox v. Callaway Cnty. Sheriff's Dep't*, No. 2:18-CV-04045-NKL, 2019 WL 1049389, at *2 (W.D. Mo. Mar. 5, 2019) (denying defendants motion to dismiss and stating "[t]o state a claim under Title II of the ADA, Ms. Cox must allege that she is a qualified individual with a disability denied participation in, or the benefits of, the services, programs, or activities of a public entity because of her disability.") (citing *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir.1998)).

To recover compensatory damages for a violation of Title II, a plaintiff must show that the actions of a defendant were taken with discriminatory intent. *Meagley v. City of Little Rock*, 639 F.3d 384 (8th Cir. 2011). There are two routes to demonstrate discriminatory intent on the part of the City of St. Louis—vicarious liability or deliberate indifference. Plaintiff has pleaded both.

The circuits are split on whether vicarious liability is available under Title II. While the Eighth Circuit has not yet held on the question of vicarious liability for Title II claims, this Court could follow the Fifth, Ninth, and Fourth Circuits to find that the City of St. Louis can be held vicariously liable for the actions of its employees under Title II of the ADA. *See Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574-76 (5th Cir. 2002); *Duvall v. County of Kitsap,* 260 F.3d 1124, 1141 (9th Cir. 2001) (holding that the doctrine of *respondeat superior* applies to claims asserted directly under the ADA "in part because the historical justification for exempting municipalities from *respondeat superior* liability does not apply to [these statutes], and in part because the doctrine 'would be entirely consistent with the policy of that statute, which is to eliminate discrimination against the handicapped'"). If this Court finds vicarious liability

applicable, "neither a policymaker, nor an official policy must be identified for claims asserted under the ADA or the RA" *See Delano-Pyle*, 302 F.3d at 575. This is a key distinction between *Monell* liability and the liability of a municipality under Title II.[2]

Even if this Court does not extend Title II vicarious liability to the Eighth Circuit, the City can still be liable if Plaintiff shows the City intentionally discriminated against her on the basis of her disability. Intentional discrimination can be proven by showing that the City acted with deliberate indifference to her rights under the ADA. *Meagley*, 639 F.3d at 389.[3] This test draws on the deliberate indifference standard for Title IX cases outlined in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998). Deliberate indifference under Title II requires: "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Culp v. Caudill*, 140 F.4th 938 (7th Cir. 2025); *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) ("deliberate indifference…can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights."). This deliberate indifference test only requires evidence about the defendant entity's employees "who at a minimum ha[ve] authority to address the alleged discrimination and to institute corrective measures on the [entities] behalf." *Gebser*, 524 U.S. at 290.

Plaintiff has pleaded both that the SLMPD officers who interacted with her were intentionally discriminatory (which would be sufficient to establish liability of the City of St.

---

[2] *Monell* liability requires identification of a final policymaker. *Ware v. Jackson Cnty., Mo.,* 150 F.3d 873, 880 (8th Cir. 1998.)

[3] In 2025, the Supreme Court of the United States held (in a different type of claim) that intentional discrimination under Title II of the ADA can be satisfied through proof of deliberate indifference: "That standard does not require a showing of personal ill will or animosity toward the disabled person. Rather, to show deliberate indifference, it is enough that a plaintiff prove the defendant disregarded a strong likelihood that the challenged action would result in a violation of federally protected rights." *A. J. T. by & through A. T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 344–45 (2025). Neither *A.J.T.* or *Meagley* weigh in on whether this deliberate indifference standard is the **only** route to municipal liability or reject the line of cases allowing for vicarious liability.

Louis under a vicarious liability framework), *and* that the City of St. Louis intentionally discriminated against her by being deliberately indifferent to SLMPD's non-ADA compliant post-arrest transportation service.

      c. <u>A variety of City officials have the authority to enforce ADA compliance measures on the City's behalf, many of these officials are "above" the police department.</u>

At the pleading stage for an intentional discrimination claim, Plaintiff is not required to identify the specific individuals within the City of St. Louis that had authority to take corrective measures regarding SLMPD's transportation service. The question of which City officials had the authority to take corrective action regarding SLMPD's ADA compliance is a topic for discovery best interrogated during summary judgement. *See e.g.*, *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) (allowing plaintiff's claim to proceed through discovery before assessing whether plaintiff had proven he was "denied benefits" or "otherwise subjected to discrimination" at summary judgement). Plaintiff has not yet had the opportunity to conduct discovery, but allegations similar to her own have been found sufficient to pass a motion to dismiss and proceed to more detailed discovery. *Cox v. Callaway County Sheriff's Department*, 2019 WL 1049389.

However, for the purposes of answering this Court's questions regarding who the 'appropriate officials' are at the City of St. Louis, Plaintiff asks this Court to take judicial notice of publicly available information on who at the City of St. Louis is responsible for ensuring that *all* City departments comply with ADA guidelines.

St. Louis City's Office on the Disabled, established in 1994 by St. Louis City Ordinance 3.36.730 *et seq.*, assists the City in complying with the Americans with Disabilities Act. St. Louis-Mo Gov. *Office on the Disabled*, STLOUIS-MO.GOV, http://www.stlouis-

mo.gov/government/departments/human-services/disabled-office/ (last visited Oct. 8, 2025). [4] The Advisory Council is tasked with keeping "the Mayor, the Board of Aldermen, the Director of Human Services, and the Commissioner of the Disabled advised an all matters relating to the welfare of disabled persons residing in the City." *Id.*

Pursuant to St. Louis City Ordinance 3.36.740(G), the Office of the Disabled shall "work cooperatively with other City departments and agencies in the development of policy and the implementation of programs." St. Louis, Mo. Rev. Ord. 3.36.740(G). The Office on the Disabled further ensures that "The City of St. Louis will make all reasonable modifications to policies and programs to ensure that people with disabilities have an equal opportunity to enjoy all of its programs, services, and activities." *Office on the Disabled*, STLOUIS-MO.GOV, http://www.stlouis-mo.gov/government/departments/human-services/disabled-office/ (last visited Oct. 8, 2025). Lastly, the Office represents that it provides "training on the ADA to various City agencies and others as appropriate." *Id*.

At this point, the City has not moved to dismiss Plaintiff's claim against it. If the City were to file a motion to dismiss raising issues with insufficiencies of the pleading, per Rule 15, Plaintiff has a right to amend its pleading against the City of St. Louis 21 days after service of a responsible pleading or a motion. See Fed. R. Civ. P. 15(a)(1)(B).

**II.     Mo. Rev. Stat. § 84.325.3 does not require a transfer-of-interest in the instant case as the City itself advises the Board and SLMPD on ADA compliance.**

---

[4] The Office of the Disable consists of: the Advisory Council on the Disabled, Commissioner on the Disabled and ADA Coordinator David Newburger, Deputy Commissioner Andrew Lackey, and ADA Service Specialist Kimberly Kreitner-Riegerix. The Advisory Council on the Disabled consists of eight active board members: Rush Wilkerson, Thy Huskey, Kerri Morgan, Conna Gunning, Gina Hilberry, Naomi Soule, and William Sheldon. St. Louis-Mo Gov. *Advisory Council on the Disabled*, STLOUIS-MO.GOV, https://www.stlouis-mo.gov/government/departments/human-services/disabled-office/advisory-council.cfm (last visited Oct. 8, 2025). Members of the advisory council are "appointed by and serve at the pleasure of" the Mayor. *Id*.

Mo. Rev. Stat. § 84.325.3 states in full "Upon the assumption of control by the board of police commissioners under subsection 1 of this section, the state shall accept responsibility, ownership, and liability as successor-in-interest for contractual obligations and other lawful obligations of the municipal police department." RSMo § 84.325.3. The City of St. Louis asks this Court to rely on this provision to find that the proper defendant is now the State (despite no motion from the State to be substituted). The Attorney General's office, representing the Board of Police Commissioners, initially stated this required substitution of the Board of Police Commissioners. Doc. 23. But this interpretation of the statute disregards the fact that the liabilities at issue in the instant case do not solely belong to the municipal police department. Both the text of Title II and case law interpreting the same hold municipal entities liable when their actors do not comply with the ADA.[5]

All parties agree that at the time of the incident giving rise to this suit, the named officers were on duty with SLMPD. SLMPD is a subdivision of the City of St. Louis through its Department of Public Safety. The City created the Office on the Disabled to ensure that its departments comply with the ADA. The City therefore understands it has a lawful obligation to ensure that "City departments and agencies" develop policies and implement programs that comply with the ADA. St. Louis, Mo. Rev. Ord. 3.36.740(G) ("Powers and Duties…imposed by law"). Thus, at the time the incidents giving rise to this complaint occurred, it was the City's

---

[5] Notably, the SLMPD officers named in the instant case were sued in their official capacities, not individually. This is because government officials cannot, by law, be sued in their individual capacities for ADA violations. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999); *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) ("Individuals in their personal capacities, however, are not subject to suit under Title II, which provides redress only from public entities."). A suit against a government official in their official capacity is effectively a suit against the municipal entity. *Williams v. Silvey*, No. 4:09CV211FRB, 2009 WL 2231670, at *6 (E.D. Mo. July 24, 2009), *aff'd*, 375 F. App'x 648 (8th Cir. 2010) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Plaintiffs have no position as to whether the City Law Department or the Missouri Attorney General's office represents officers in their official capacity.

lawful obligation to ensure that SLMPD complies with the requirements of Title II of the ADA. Functionally, this means that the Board is not a proper substitution for the City. After all, SLMPD's compliance with the ADA is dependent on the City *itself* pursuant to the City's own code of ordinances.

### III. Missouri's statutory requirements for payment of money judgments against the Board.

In the event there is a money judgment against the Board, Missouri Revised Statute § 84.210 requires that the City of St. Louis provide the funds for payment of the claim. Under Section 84.210.1, RSMo 2025, the Board prepares an estimate of a budget for the operation of the Board and the St. Louis Metropolitan Police Department. The City of St. Louis is then required to allocate the entirety of that requested budget, no matter the amount.[6] While the Board presumably will include allocations for the payment of judgments in their annual budget, if they do not, under Section 84.210.2, the Board "shall pass upon all claims presented against them for the expenses incurred in the discharge of their duties" and then such claims "shall be duly audited and paid by the proper disbursing officer or officers of said cities within five days after being audited, out of any moneys in the city treasury not appropriated to the specific purposes above enumerated."

From there, Section 105.726 is clear that moneys in the state legal expense cannot be accessed for a claim against the Board except that the Board can seek reimbursement for claims already paid, if those claims are eligible for payment under section 105.711, RSMo 2025. There is a limit of two million per fiscal year. *Id*. All claims are paid on an equal share. *Id.* However,

---

[6] The statute does leave a narrow exception: unless the amount requested is so high that it does not leave room for the "expenses of the city hospital and health department, the amount necessary for lighting the city, and any sum required by law to be placed to the credit of the sinking fund of said cities." While the statute requires a *minimum* appropriation to the Board, there is no *maximum* appropriation absent those three exceptions. The Board could require 50%, 60%, 75% of the City's budget and per statute the City would have to pay it. This is the subject of ongoing litigation. See *Rogers et al v. State of Missouri*, 25AC-CC04798 (Cole County 2025).

the Board also must reimburse the attorney general and the office of administration for the cost of representation. Section 105.726.4, RSMo 2025.

In sum, in the event the Board is substituted as a Defendant and there is a judgment against the Board, the City of St. Louis will provide the funds for payment of the claims with possible reimbursement depending on what money is available that fiscal year and if the State disputes eligibility for payment.

| | |
|---|---|
| **Dated:** October 14, 2025 | Respectfully Submitted,<br>**ARCHCITY DEFENDERS, INC.**<br><br>*/s/ Ebony A. McKeever*<br>Maureen Hanlon, #70990MO<br>Ebony McKeever, #77050MO<br>440 N. 4th Street, Suite 390<br>Saint Louis, MO 63102<br>855-724-2489<br>314-925-1307 (fax)<br>mhanlon@archcitydefenders.org<br>emckeever@archcitydefenders.org<br><br>***Attorneys for the Plaintiff*** |