UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DEL-RIO SWINK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-569-ZMB |
| | ) | |
| THOMAS LOVE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant City of St. Louis's Motion to Dismiss, Doc. 50, and the St. Louis Board of Police Commissioners's Renewed Motion to Substitute Parties, Doc. 65. Because Plaintiff Del-Rio Swink has failed to establish that the City was deliberately indifferent to any Americans with Disabilities Act (ADA) violation, her lone claim against the City is dismissed without prejudice, and as a result, the Board's request to substitute itself for the City is denied as moot.

**BACKGROUND**

**I. Factual Background[1]**

Swink is a breast-cancer survivor who contracted peripheral neuropathy and degenerative joint disease as a side effect of her treatment. Doc. 1 ¶¶ 15, 17. She experiences "severe pain and limited mobility in her lower back and legs" from her peripheral neuropathy, in addition to "limit[ed] mobility" and "pain in her right arm" from her degenerative joint disease. *Id.* ¶ 15. Due to these conditions, Swink is unable to "lift her right arm, raise her legs, sit upright, lay down, or stand from a seated position without difficulty and/or pain." *Id.* ¶ 16.

[1] The Court accepts as true the following well-pled facts for the purposes of this motion. *See infra* at 4.

In November 2022, Swink went to a Walgreens pharmacy to pick up a prescription. *Id.* ¶ 20. She got into a spat with a pharmacy clerk over sunflower seeds, but the conflict resolved after the pharmacist began filling her prescription. *Id.* ¶¶ 21–25. While Swink was sitting quietly in the waiting area, Defendant Thomas Love, an off-duty police officer working for Walgreens as a security guard, approached and asked her to leave the store. *Id.* ¶¶ 26–28. Swink asked why she was being removed and for Love to identify himself, but he became "agitated and confrontational" and "toppled [Swink] out of her chair and onto the floor." *Id.* ¶¶ 29–33. Swink immediately explained that she was disabled and said, "Don't put your hands on me." *Id.* ¶ 34. Nevertheless, Love "pushed her to the floor" without warning, which triggered "extreme levels of pain radiating from her back and right hip." *Id.* ¶¶ 36–37. Love then told Swink that she was under arrest and attempted to handcuff her, despite Swink informing him that she was disabled and could not move her right arm. *Id.* ¶¶ 39–41. Ignoring her appeal regarding her disability, Love "dragg[ed] Swink across the floor with no regard for [her] problematic arm." *Id.* ¶ 42.

When the St. Louis Metropolitan Police Department (SLMPD) arrived at the store, Swink informed Defendant Officer Trevor Krepps, and later Defendant Officers Alfred Allmon and Kristine Stark, about her mobility issues. *Id.* ¶¶ 53, 56–58, 62, 66, 71. Nevertheless, they led Swink to a police van, refusing her requests for an ambulance and to be helped into the vehicle. *Id.* ¶¶ 70–81. The officers also failed to ensure that Swink was properly secured with a seatbelt. *Id.* ¶ 81. Allmon then got in the driver seat and sped towards BJC Hospital. *Id.* ¶¶ 82–84. During the ensuing "rough ride," Swink told Allmon that she had fallen and was injured, but he did not stop or adjust his driving. *Id.* ¶¶ 1, 84–86. As a result of these events, Swink's peripheral neuropathy significantly worsened, and she has developed anxiety, agoraphobia, and depression. *Id.* ¶¶ 106–112.

## II. Procedural Background

Swink filed her Complaint in April 2025. Doc. 1. In it she asserted excessive-force and negligence claims against Love, a respondeat-superior clam against Walgreens, and an ADA claim for failing to accommodate her disabilities during the transport against the SLMPD officers and the City of St. Louis. *Id.* at 13–20.

The Board moved to substitute itself for the City, and after a hearing on that and related issues, the parties submitted thorough post-hearing briefs. Docs. 23, 44–47. The City also filed its own motion to substitute, Doc. 42, which Swink opposed, Doc. 48. The Court ultimately denied the motions to substitute. Doc. 49. Thereafter, the City filed its motion to dismiss, Doc. 50, contending that: (1) vicarious liability is not available under Title II of the ADA and (2) that Swink more broadly fails to plead an ADA violation, Doc. 51 at 2–9. In response, Swink expressly abandoned any vicarious-liability theory but otherwise argued that she stated a claim for relief. Doc. 54. Three months after the motion to dismiss became ripe, Doc. 59, the Board filed a renewed motion to substitute, Doc. 65, which is now fully briefed, *see* Doc. 66; E.D. MO. L.R. 4.01(c).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential

allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

**DISCUSSION**

The City advances four main grounds for dismissal, but the Court need address only one dispositive issue: the Complaint does not establish that the City was deliberately indifferent to Swink's right to an ADA-compliant post-arrest transport. The City's argument on this front rests on two prongs. First, the City contends it cannot be held liable for the actions of the various SLMPD officers through vicarious liability. Doc. 51 at 2–4. But Swink clarifies that she is not relying on this theory. Doc. 54 at 4.[2] Instead, she advances a direct claim against the City for failure to implement policies regarding post-arrest transport of disabled individuals. *Id.* at 4–7. The City argues that she has failed to do so, Doc. 59 at 1–5, and the Court agrees.

---

[2] This concession is perhaps unsurprising in light of this Court's prior conclusion that "the Eighth Circuit would follow the Eleventh and Sixth Circuit Courts and hold that vicarious liability is not available in Title II cases." *See Casey v. Cooper*, No. 4:23-CV-206-JMB, 2024 WL 1856176, at *5 (E.D. Mo. Apr. 29, 2024).

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. And the Eighth Circuit has held that "the ADA . . . appl[ies] to law enforcement officers taking disabled suspects into custody." *Roberts v. City of Omaha*, 723 F.3d 966, 973 (8th Cir. 2013) (citing *Gorman v. Bartch*, 152 F.3d 907, 913 (8th Cir. 1998)). Asserting a viable ADA claim for compensatory damages requires a plaintiff to plead "deliberate indifference" to her rights. *Elsharkawy v. Chisago Lakes Sch. Dist. Bd. of Educ.*, 183 F.4th 580, 589 (8th Cir. 2026). To do so, "it is enough that a plaintiff prove the defendant disregarded a strong likelihood that the challenged action would result in a violation of federally protected rights." *Id.* (citation omitted). "Deliberate indifference is a high bar, requiring more than even gross negligence." *Ferrell v. Pigue*, 2026 WL 1683223, at *5 (E.D. Ark. June 10, 2026) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

The Eighth Circuit has not had the opportunity to address the threshold for pleading a strong likelihood that the *absence* of a specific policy violates the ADA. But persuasive precedent both from this Court and the Eleventh Circuit has held that actual notice of past rights violations is required for claims against municipalities. *See Reeves v. North Cnty. Coop.*, No. 4:25-CV-1895-HEA, 2026 WL 2137242, at *4 (E.D. Mo. July 24, 2026) (requiring "notice of the allegedly discriminatory conduct"); *Laubscher ex rel. Laubscher v. Gwinnett Cnty.*, 2026 WL 1897046, at *8 (11th Cir. July 1, 2026) (requiring "a pattern of incidents and ADA violations similar to the underlying alleged discrimination"). Intuitively, the Eighth Circuit's adoption of the deliberate-indifference pleading standard implies that courts should follow the same stringent requirements that test imposes in other contexts, *see Laubscher*, 2026 WL 1897046, at *7, particularly given the difficulty of establishing deliberate indifference via failure to adopt a policy. But at a minimum,

where actual notice is lacking, courts have required a showing that the challenged conduct would obviously violate the ADA. *See Casey*, 2024 WL 1856176, at *5 (requiring evidence of "prior" or "anticipated violations"); *see also Gray v. Cummings*, 917 F.3d 1, 19 (1st Cir. 2019) (excusing notice where risk is "so obvious as to eliminate the knowledge requirement"); *Haberle v. Borough of Nazareth*, 936 F.3d 138, 141 (3d Cir. 2019) (adopting similar test).

Here, not only has Swink failed to allege actual notice, she has not demonstrated that the City's lack of a specific policy created an obvious risk of an ADA violation. Moreover, under any pleading standard, the Complaint's conclusory allegations cannot establish deliberate indifference. While the City is on notice that the ADA applied to post-arrest transportation, *see* Doc. 54 at 6 (collecting cases), Swink fails to adequately plead that the City disregarded a strong likelihood that its failure to adopt a policy regarding post-arrest transportation violated the ADA. Indeed, the only two allegations in the Complaint regarding the City's conduct are conclusory as to awareness of issues with the SLMPD's post-arrest transportation practices. Doc. 1 ¶¶ 142–43. Thus, the operative pleading does not support its claims with sufficient facts to credibly allege that the City was deliberately indifferent to Swink's rights. As such, her claim against the City fails,[3] and the City's dismissal from this case moots the Board's renewed motion for substitution. Doc. 65.

---

[3] Swink alternatively requests leave to amend if the Court granted the City's Motion to Dismiss. Doc. 54 at 15. But that conditional request does not comply with the Local Rules. See E.D. MO. L.R. 4.07 ("A proposed amendment to a pleading or amended pleading itself must be submitted at the time any motion for leave to amend any pleading is filed."); *see also King v. United Parcel Serv.*, 152 F.4th 915, 923 (8th Cir. 2025) ("The general rule is that a district court can deny leave to amend when a plaintiff does not submit a motion and does not offer a proposed amended complaint."). However, this order does not preclude Swink from renewing her request in a proper motion, provided she can show why amendment would not be futile based on the above analysis.

## CONCLUSION

Accordingly, the Court **GRANTS** Defendant the City of St. Louis's [50] Motion to Dismiss without prejudice and **DENIES** the [65] Renewed Motion to Substitute Parties as moot.

So ordered this 8th day of September 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE